IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WARREN CHASE #326-514        :

v.                           :   Civil Action No. CCB-15-460

THE ENTIRE NBCI PRISON       :
    ADMINISTRATION, et al.
                             :

**MEMORANDUM**

On February 18, 2015, Warren Chase, a Maryland Division of Correction ("DOC") long-term disciplinary segregation prisoner incarcerated at the North Branch Correctional Institution in Cumberland, Maryland ("NBCI"), filed a civil rights action seeking money damages and injunctive relief mandating his removal from disciplinary segregation housing.[1]  The complaint, accompanied by a motion and affidavit seeking *in forma pauperis* status (ECF No. 2), was granted subject to assessment of an initial partial filing fee and subsequent partial payments required pursuant to 28 U.S.C. § 1915(b)(1) and (2).[2]

The complaint proceeded solely against Warden Frank Bishop, Jr., regarding plaintiff's claim that his indefinite placement on disciplinary segregation status has impacted his mental health.  (ECF No. 4 at p. 2).  Despite plaintiff's status as a "three strikes" litigant under 28 U.S.C. § 1915(e), the claim proceeded as it arguably fell under the "imminent danger of serious physical injury" exception provided in § 1915(g).  (ECF No. 1; ECF No. 4 at p. 2).  Defendant

---

[1] A plethora of other unrelated claims raised in the complaint, deemed not to warrant exception under 28 U.S.C. § 1915(e), were dismissed without prejudice because Chase is generally barred from proceeding *in forma pauperis* absent an allegation of imminent physical harm.  (ECF No. 4 at p. 4, ¶ 6).

[2] The Fiscal Administrator is obligated to take monthly sums from plaintiff's prison account to satisfy the $350 filing fee.  A six-month account analysis shows that plaintiff has maintained a 38 cent balance in his prison account, and would be assessed an eight cent initial partial filing fee. (ECF No. 6).  Prison finance personnel shall assess this partial fee and thereafter assess monthly partial payment towards the $350.00 filing fee, in accordance with 28 U.S.C. § 1915(b)(1) and (2).  Defendant's counter motion to deny *in forma pauperis* status (ECF No. 17) is denied.

was ordered to clarify how long plaintiff is likely to remain on segregation; whether his stay on disciplinary segregation status is actually for an indefinite period of time; whether regular review of plaintiff's placement on disciplinary segregation has occurred and will occur in the future; and whether plaintiff has been provided access to mental health services during his confinement.

Following defendant's response (ECF No. 9), preliminary injunctive relief mandating plaintiff's immediate release from disciplinary segregation status was denied and defendant was ordered to analyze plaintiff's disciplinary segregation confinement in light of recent Fourth Circuit decisions, including *Prieto v. Clarke,* 780 F.3d 245 (4th Cir. 2015), and *Incumaa v. Stirling,* 791 F.3d 517, 531 (4th Cir. 2015), *as amended* (July 7, 2015). (ECF No. 11 at pp. 2-3). Defendant has complied, filing an unopposed[3] motion to dismiss or, in the alternative, motion for summary judgment. (ECF No. 15). A hearing in this matter is unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For reasons set forth herein, the motion, construed as a motion for summary judgment, shall be granted and the case closed.

**Background**

Plaintiff asserts that his indefinite stay on disciplinary segregation since 2008 has caused "extreme social isolation" and impacted his mental health. Plaintiff also claims that he has not been permitted to take part in programming such as the Behavior Management Program (BMP) or for anger management, he has not had any of his disciplinary segregation time cut, he has not been protected from harm, he cannot exhaust administrative remedies because he is

---

[3] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk of Court on March 10, 2016, informed plaintiff that a dispositive motion had been filed; that plaintiff had seventeen days in which to file written opposition to the motion; and that if plaintiff failed to respond, summary judgment could be entered against him without further notice. (ECF No. 16). Plaintiff has chosen not to respond.

provided no forms, and mental health care is inadequate. He seeks declaratory and injunctive relief removing him from disciplinary segregation and 50 million dollars in damages.

Acting Warden Richard Miller avers that plaintiff in fact is serving a defined, long-term assignment to disciplinary segregation status. (ECF No. 15-2, Miller Decl. at ¶ 5). Plaintiff's current release date from disciplinary segregation is January 18, 2032. (ECF No. 15-6, Inmate Data Manager). Plaintiff has accrued numerous institutional infractions during his incarceration.[4] (ECF No. 15-3, Randy Durst Records Decl. at ¶ 5; ECF No. 15-6, Rule Violations Summary).

A warden has authority to suspend any and all of a disciplinary segregation sentence if deemed appropriate.[5] Although plaintiff had his disciplinary sentence reduced on March 22, 2013 (ECF No. 15-7), this option typically is not triggered because plaintiff continues to exhibit behavior detrimental to the security of the institution. (ECF No. 15-2 at *¶ 6)*.

Plaintiff is housed on NBCI Housing Unit 1 in a single cell. (ECF No. 15-2 at ¶ 7; ECF No. 15-8; ECF No. 15-3, Durst Decl. at ¶ 9). Due to his history of assaultive behavior, he is classified as a Maximum II inmate, the highest security classification. (ECF No. 15-3, Durst Decl. at ¶ 9). His cell is situated between other cells and plaintiff is free to communicate with the occupants of those cells. (*Id.*). He has all the privileges afforded those on disciplinary segregation as outlined in Division of Correction Directive 110-6. (ECF No. 15-2 at ¶ 7*;* ECF No. 15-3, DCD 110-6 at pp. 61-67).

---

[4] Counsel indicates those on disciplinary segregation may or may not have good conduct time taken away as a result of a guilty finding after a disciplinary hearing. The Maryland Inmate Disciplinary process is contained at Md. COMAR 12.02.27, *et seq*. http://www.dsd.state.md.us/comar/SubtitleSearch.aspx?search=12.02.27.*

[5] As of October 28, 2015, an inmate may be given no more than 90 days of segregation for any rule violation. (ECF No. 15-11, Mem. to Hr'g Officers).

Those on disciplinary segregation receive two showers each week, a weekly change of bed linen, monthly haircuts, out-of-cell activity, health care, and monthly reviews by case management staff. (ECF No. 15-2 at ¶ 7; ECF No. 15-3, DCD 110-6 (IV)(D)(1-3)(H, I, J) at pp. 63-64). Cell lights are generally turned off at night, with prisoners in control of the lights inside the cell. An exception is made for special housing inmates, who must rely on an officer to turn off the lights. (ECF No. 15-4, Bradly Wilt, Housing Unit 1 Manager, Decl. at ¶ 3). Out-of-cell activity is scheduled for at least five days each week for an hour, and is held outdoors, weather permitting. (ECF No. 15-3, DCD 110-6 (VI)(H) at p. 64; ECF No. 15-4 at ¶ 3).

Medical care includes mental health and dental care. (ECF No. 15-3, DCD 110-6(VI)(I) at p. 64). Disciplinary segregation prisoners have access to educational services if provided by the Maryland State Department of Education, library services, legal reference materials, access to a chaplain for religious assistance, mail, commissary, and the material to clean their cells at least once each week. (ECF No. 15-3, DCD 110-6(VI)(K-M, O, Q-S) at pp. 64-66).

Plaintiff may discuss his status monthly with NBCI case management staff. (ECF No. 15-8 at ¶ 7). A review of case notes for 2015 shows that on most occasions plaintiff attended those meetings. (*Id;* ECF No. 15-9, Confidential Case Notes). Plaintiff is seen by NBCI mental health, social work, medical, and case management staff on a regular basis. (ECF No. 15-8 at ¶ 8).

NBCI offers both psychological and psychiatric treatment upon request, and mental health staff, medical staff, and corrections personnel may also refer a prisoner for mental health services if it appears necessary. (ECF No. 15-5, Decl. of Bruce Liller, MS, LCPC, NBCI Mental Health Program Manager, at ¶ 2). Appropriate medications may be prescribed or discontinued at the psychiatrist's direction. (*Id.*). Correctional personnel receive training about mental health

issues and they are directed to seek mental health intervention for prisoners when appropriate. (*Id.*). In addition, as part of the mental health contract with a private entity, a nurse makes rounds in the Disciplinary/Administrative Segregation Housing weekly as another means to assess worsening mental health symptoms. (*Id.*).

NBCI has a Special Needs Unit (SNU) which houses those with serious mental illnesses. (ECF No. 15-5 at ¶ 3). Plaintiff is not housed there because his poor conduct is deemed to stem mainly from behavioral maladjustment, rather than mental illness. (*Id.*). In the year following the filing of this lawsuit, plaintiff has been regularly monitored by medical and mental health staff and is deemed competent and responsible, with no worsening of his mental illness. (*Id.*). A review of medical and mental health records between February, 2014, and February, 2015, shows that he was physically seen and evaluated by health care and mental health personnel on numerous occasions and was provided diagnostic testing and medications. (ECF No. 15-5 at ¶ 4). During this period, he refused mental health services on at least 11 occasions. (*Id.*).

Since October 28, 2008, plaintiff has filed over 300 Administrative Remedy Procedure (ARP) grievances at NBCI. (ECF No. 15-8 at ¶ 6; ECF No. 15-10, List of ARPs). Plaintiff had a parole hearing on October 24, 2013, and a parole re-hearing was scheduled for September, 2016. (ECF No. 15-3 at p. 68).

## Standard of Review

As noted, defendant has moved to dismiss or, in the alternative, for summary judgment. "'The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts that plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted."

Fed R. Civ. P. 12(b)(6). Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "accept[ ] as true the well-pled facts in the complaint and view[ ] them in the light most favorable to the plaintiff." *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion. *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

"There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). First, all parties must "be given 'some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment,'" which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citations omitted); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 712 F.3d at 281 (quoting *Gay*, 761 F.2d at 177).

Plaintiff had adequate notice that defendant's motion might be treated as one for summary judgment. The motion's alternative caption and attached materials are in themselves sufficient indicia. *See Laughlin*, 149 F.3d at 260–61.  Further, plaintiff has not pointed to any additional evidence that exists that would be helpful to the disposition of this case and did not oppose the dispositive motion.  He did have access, however, to the affidavits, declarations, and record submissions, along with the other evidence presented in this case. Accordingly, defendant's motion shall be treated as a motion for summary judgment.

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). At

the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 77879 (4th Cir. 1993)) (internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Plaintiff's claim shall be examined in light of this standard of review.

## Analysis

Read broadly, Chase is complaining that his placement on disciplinary segregation status has impacted his mental health. Based on the unopposed submissions by corrections personnel, it does not appear that his conditions of confinement violate his due process rights and constitute an atypical and significant hardship under *Sandin v. Connor*, 515 U.S. 472, 484 (1995). Further, the conditions of confinement do not appear to implicate a liberty interest under *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005).

In *Wilkinson,* the Supreme Court found a liberty interest implicated where inmates in Ohio were assigned to the Ohio State Penitentiary (OSP), a super-maximum security prison where almost all human contact was prohibited and communication between cells was forbidden. 545 U.S. at 223. Exercise was limited to one hour a day in a small indoor room, and prisoners were exposed to light 24 hours per day. *Id.* at 223. The Court noted that although the conditions alone were not enough to create a liberty interest, when coupled with the indefinite duration of assignment[6] to the prison and the disqualification of an otherwise eligible inmate for parole consideration, the conditions "impose an atypical and significant hardship within the correctional

---

[6] The District Court noted that the length of an inmate's stay at the prison was a function of the procedures for review in place. *See Austin v. Wilkinson*, 189 F.Supp.2d 719, 740 (N. D. Ohio 2002). Those assigned to the prison could only progress through the various levels after reclassification reviews which were conducted annually and "even inmates with exemplary behavior rarely progress through OSP in less than two years." *Id.* In the instant case, plaintiff has regularly scheduled case management reviews and his parole eligibility has been reviewed.

context." *Id.* at 224. Plaintiff is not subjected to the extreme deprivations outlined in *Wilkinson*: his segregation confinement is not indefinite; his continuation on segregation is regularly reviewed; and his parole eligibility has been examined on at least one occasion.

Further, plaintiff is not subjected to the harsh conditions outlined in *Incumaa*, 791 F.3d at 531. There, the court found a prisoner had been subjected to atypical and significant hardship in relation to the ordinary incidents of prison life where he was placed in the Special Management Unit ("SMU") for 20 years despite his "nearly perfect" disciplinary record while confined there, and where the confinement conditions were "severely restrictive and socially isolating." *Id.* at 531, 534.

The court found that during the plaintiff's 20-year confinement in the SMU, he could leave his cell for recreation only one hour approximately ten times per month, was strip searched every time he left his cell, was provided smaller portions of food than inmates in general population, was denied all educational and vocational opportunities, and was denied the opportunity to receive mental health treatment. *Id*. at 521–22. The court also questioned whether plaintiff had been given a meaningful opportunity to understand and contest the reasons for holding him in solitary confinement. *Id*. at 532. The court stated that the "risk of erroneous deprivation [was] . . . exceedingly high" in this case because 1) the department had only a single-layered confinement review where the warden did not participate in the decision to release the inmate unless the inmate filed a grievance, 2) the department was not required to provide a factual basis for its decisions and they "merely rubber-stamped [plaintiff's] incarceration in the SMU (figuratively and sometimes literally), listing in 'rote repetition' the same justification every 30 days," and 3) the plaintiff was not given the right to contest the factual bases for his detention. *Id*. at 534-35.

Again, the facts presented do not demonstrate this level of deprivation and do not run afoul of Supreme Court precedent. Plaintiff meets regularly with case management staff to discuss his continued placement on segregation, and his segregation sentence may be shortened if his conduct merits it.[7]

For these reasons, defendant's motion for summary judgment shall be granted. A separate order shall be entered in accordance with these findings.[8]

October 17, 2016                    _____/S/_____
Date                                Catherine C. Blake
                                    United States District Judge

---

[7] Thus, plaintiff has adequate due process protection and his continued segregation confinement does not run afoul of considerations discussed in *Prieto,* 780 F.3d at 248–49.

[8] In light of this determination, the court need not analyze defendant's claim of qualified immunity.